ROSENPLANTER v. PROVIDENT SAV. LIFE ASSUR. SOC. OF NEW YORK.

(Circuit Court of Appeals, Sixth Circuit. October 3, 1899.)

No. 695.

1. LIFE INSURANCE—FORFEITURE FOR NONPAYMENT OF PREMIUMS—NOTICE UNDER NEW YORK STATUTE.

Under Laws N. Y. 1877, c. 321, which requires a life insurance company to mail a notice to a policy holder at least 30 days before the maturity of a premium, to entitle it to declare a forfeiture for default in payment of such premium when due, a notice mailed on the 1st of September of a premium maturing October 1st is ineffectual, and the policy remains in force notwithstanding a failure to pay such premium until terminated by a subsequent notice of the default, and giving 30 days thereafter for payment, as required by the statute.

2. SAME—CONSTRUCTION OF POLICY—TERM CONTRACTS.

A policy of life insurance which by its terms is to remain in force for one year, but is renewable from year to year thereafter, during the life

96 F.—46

of the insured, on payment of the stipulated premiums, except as reduced by the application of the surplus and guaranty fund of the company, although it gives the insured a continuing interest in such fund, is a "term insurance contract for one year or less," within the meaning of Laws N. Y. 1892, c. 690, which expressly repeals Laws 1877, c. 321, and excepts such term contracts from those requiring notice for their termination on account of nonpayment of premiums.

3. SAME—FORFEITURE FOR NONPAYMENT OF PREMIUMS—REPEAL OF STATUTE.

A term contract of life insurance for one year, governed by the laws of New York, was made in 1889, and became subject to the statute of 1877, relating to forfeitures. Prior to the repeal of such law, in 1892, there had been default in the payment of renewal premiums, which, by the terms of the policy, rendered the insurance forfeited, but, by virtue of the statute, it remained in force, owing to the failure of the company to serve the required notice. After the repeal of such law, and the enactment of the new law of 1892, which excepted such policies from those requiring notice before forfeiture, there were further defaults in the payment of maturing premiums. *Held* that, as to all premiums maturing after the repeal of the law of 1877, the policy was not affected by such law, but became forfeited on the nonpayment of such premiums in accordance with its own provisions.

4. CONSTITUTIONAL LAW—IMPAIRING OBLIGATION OF CONTRACTS— REPEAL OF STATUTE.

Laws N. Y. 1877, c. 321, providing that no life insurance company should declare a policy forfeited for nonpayment of premiums until it had given the insured a prescribed notice, did not become a part of contracts of insurance made while it was in force, but merely suspended the operation of the provisions of such contracts declaring forfeitures until the required notice was given; hence the repeal of such statute left the contracts made by the parties in full force, and was not an impairment of their obligation.

In Error to the Circuit Court of the United States for the Western District of Tennessee.

This was an action upon a policy of life insurance. The defendant demurred to the declaration. The demurrer was sustained, as not stating a good cause of action. 91 Fed. 728. From the judgment thereon the plaintiff sued out this writ of error.

W. D. Wilkerson, for plaintiff in error.

Frank P. Posten, for defendant in error.

Before LURTON, Circuit Judge, and CLARK and THOMPSON, District Judges.

LURTON, Circuit Judge, after making the foregoing statement of facts, delivered the opinion of the court.

The declaration shows that the contract of insurance upon which the suit was brought was made April 1, 1889. In consideration of the premium paid and stipulated to be paid, the insurance society agreed to pay the plaintiff, Mary A. Rosenplanter, the wife of the insured, Carlos G. Rosenplanter, the sum of $10,000 within 90 days after acceptance of satisfactory proof of the death of said Carlos G. Rosenplanter, "provided such death shall occur before 12 o'clock on the 1st day of April, 1890." The said contract further obligated the society "to renew and extend said insurance upon like conditions during each succeeding year of the life of the insured from the date thereof upon the payment of the annual renewal premiums

for the actual age attained by said insured, in accordance with the schedule printed on the next page of said policy, for each one thousand dollars insured, except as reduced by the application of the surplus and guaranty fund, such payments to be made in semi-annual equivalents, payable on 1st days of October and April, respectively, in each succeeding year." But it was further provided in said policy that, if "the mortality in this society shall continue as favorable in the future as it has been in the past in the largest and best companies, this insurance will be extended and renewed, during the whole expectation or probable lifetime of the within-named insured, at the rate of premium charged for the first year only of this policy." It was also a term of the policy that failure to pay when due any semiannual equivalent "will terminate the policy," and that, "subject to the stipulations regarding payment of premiums," the policy should, if the death occurred two or more years after its date, "be incontestable, except for fraud in obtaining this policy." The form of the policy is not at all like that construed in Insurance Co. v. Statham, 93 U. S. 24, where it was said: "These policies did assure the life of the party named in a specific amount for the term of his natural life." The policy here involved is an agreement for a policy of insurance from year to year, and the payment of an annual premium only paid for an insurance for a single year. The extension of the policy for a succeeding year depended upon compliance with the terms and conditions in respect of a further premium payment to be made by the insured. "It was," to quote the language of the court of appeals of New York in McDougall v. Society, 135 N. Y. 551-553, 32 N. E. 251, where a policy in essentials much the same was involved, "a contract for an insurance for the term of one year only, providing, however, by its terms, for its renewal for successive years upon compliance by the assured with the conditions named." Nevertheless, the terms upon which it might be renewed by the payment for succeeding years of the same rate of insurance charged for the first year only, notwithstanding the higher rate chargeable for the greater age of the insured, and the growing interest of the assured in the surplus premiums paid by him which go to form a reserve or accumulated fund operating to reduce subsequent premiums, gave to the insured an interest in the contract beyond the mere insurance for the term of a current year. We shall therefore assume that this contract was within the meaning and protection of chapter 321 of the New York Laws of 1877. McDougall v. Society, 64 Hun, 515, 19 N. Y. Supp. 481. That statute was in force when this policy issued. Among other things, it provided that:

"No life insurance company doing business in this state shall have power to declare forfeited or lapsed any policy hereafter issued or renewed by reason of non-payment of any annual premium or interest, or any portion thereof, except as hereinafter provided. Whenever any premium or interest due upon any such policy shall remain unpaid when due, a written or printed notice stating the amount of such premium or interest due on said policy, the place where said premium or interest should be paid, and the person to whom the same is payable, shall be duly addressed and mailed to the person whose life is assured."

Omitting the description of the part of the notice for the payment of an unpaid premium, and declaring a forfeiture if the notice is not complied with, the final proviso reads:

"Provided, however, that a notice stating when the premium will fall due, and that if not paid the policy and all payments thereon will become forfeited and void, served in the manner hereinbefore provided, at least thirty and not more than sixty days prior to the day when the premium is payable, shall have the same effect as the service of the notice hereinbefore provided for."

The contract in question is a New York contract, and specifically provides that "at all times and places" it "shall be construed to be a contract made in the city of New York."

The declaration avers that the insured paid the semiannual premium for April 1, 1889, and the semiannual premium due October 1, 1889, and the semiannual premium due April 1, 1890, and the semiannual premium due October 1, 1890, and the semiannual premium due April 1, 1891; but that he did not pay the semiannual premium due October 1, 1891, or the semiannual premium due April 1, 1892, or the semiannual premium due April 1, 1893, or the semiannual premium due October 1, 1893, or the semiannual premium due April 1, 1894; and that the insured died September 5, 1894, leaving six semiannual premiums due and unpaid. The averment of the declaration is that, notwithstanding the nonpayment of said last six semiannual premiums, the policy was in force at the death of the insured, by force of the said New York statute of 1877. The further averment is that the said insurance society "did mail the notice required by the said statute on the 1st day of September, 1891, to the insured," of the semiannual premium due and payable October 1, 1891, but that said notice was mailed only 29 days prior to October 1, 1891, and not at least 30 days prior to the maturity of a premium, as required by the said statute, and that no other notice in respect to that premium, nor any of those which subsequently accrued, was ever given or mailed. In consequence of this noncompliance with the said statute, it is contended that the said policy was in full force and effect at the date of the death of the insured.

The learned judge who presided in the circuit court yielded to the authority of the case of Hicks v. Insurance Co., 9 C. C. A. 215, 60 Fed. 690, and reported as Rae's Ex'rs v. Insurance Co., 20 U. S. App. 410, decided by the United States circuit court of appeals for the Second circuit, and held that the day upon which this notice was mailed should be excluded in the computation of time, and hence that it had not been mailed 30 days prior to the day when the premium due October 1, 1891, fell due, and that the society was in no better position than it would be if no notice had been mailed. The opinion of the Second circuit court of appeals is based upon the decisions of the courts of New York, and involved the construction of the same New York statute here under consideration. Accepting this opinion as an authoritative interpretation of the law of New York, we concur in holding that the notice given was not the notice required by that law, and was ineffectual to terminate the contract, under the provisions in respect to the forfeiture or lapsing of New York contracts

of insurance made subject to the provisions of the act of 1877. The notice required by the act of 1877 might be either a notice of the time when a premium would fall due or of a default in the payment of a premium. If given before default, the requirement is that the notice shall be mailed "at least thirty and not more than sixty days prior to the day when the premium is payable." If given after a default has been made, the requirement is equally specific that it shall be a notice that a premium is due and unpaid, and that if not paid within thirty days "after the mailing" of such notice the "policy and all payments thereon will become forfeited and void." The same section also provides that, "in case the payment demanded by such notice shall be made within the thirty days limited therefor, the same shall be taken to be in full compliance with the requirements of the policy in respect to the payment of said premium or interest, anything to the contrary notwithstanding; but no such policy shall in any case be forfeited or declared forfeited or lapsed until the expiration of thirty days after the mailing of such notice."

The notice given before the premium fell due was insufficient, and no notice whatever was given after the nonpayment of that premium. The effect of the prohibition against declaring a forfeiture of the interest of the assured under the contract was to keep the policy alive as a valid subsisting insurance, notwithstanding the stipulations of the parties to the contrary. The duration of the policy, so long as it was dominated by the statute, was not dependent upon the payment of premiums on the day named therein, but upon payment within 30 days after the statutory notice should be given. The only way in which the policy could be terminated under the statute was by the failure of the insured to pay his premium upon notice "mailed" 30 days before the premium was due, or by a notice of default and demand for payment within 30 days after mailing such notice. Baxter v. Insurance Co., 119 N. Y. 450–455, 23 N. E. 1048.

But for the subsequent act of May 18, 1892, there could be no serious doubt that this policy was in force at the date of the death of the insured, no effectual statutory notice having been given. Chapter 690 of the Revision of the Statutory Laws of New York, approved May 18, 1892, is a general act revising the whole law of the state of New York in respect of insurance corporations, and expressly repeals all of chapter 321 of the act of 1877. By section 92 of that act it is provided:

"Sec. 92. No Forfeiture of Policy Without Notice. No life insurance corporation doing business in this state shall declare forfeited, or lapsed, any policy hereafter issued or renewed, and not issued upon the payment of monthly or weekly premiums, or unless the same is a term insurance contract for one year, or less, nor shall any such policy be forfeited, or lapsed, by reason of nonpayment when due of any premium, interest or installment or any portion thereof required by the terms of the policy to be paid, unless a written or printed notice stating the amount of such premium, interest, installment, or portion thereof, due on such policy, the place where it should be paid, and the person to whom the same is payable, shall be duly addressed and mailed to the person whose life is insured, or the assignee of the policy, if notice of the assignment has been given to the corporation, at his or her last known post-office address, postage paid by the corporation, or by an officer thereof, or per-

son appointed by it to collect such premium, at least fifteen and not more than forty-five days prior to the day when the same is payable.

"The notice shall also state that unless such premium, interest, installment, or portion thereof, then due, shall be paid to the corporation, or to a duly appointed agent or person authorized to collect such premium by or before the day it falls due, the policy and all payments thereon will become forfeited and void except as to the right to a surrender value or paid-up policy as in this chapter provided.

"If the payment demanded by such notice shall be made within its time limited therefor, it shall be taken to be in full compliance with the requirements of the policy in respect to the time of such payment; and no such policy shall in any case be forfeited or declared forfeited, or lapsed, until the expiration of thirty days after the mailing of such notice.

"The affidavit of any officer, clerk or agent of the corporation, or of anyone authorized to mail such notice, that the notice required by this section has been duly addressed and mailed by the corporation issuing such policy shall be presumptive evidence that such notice has been duly given."

Section 291 of this act provides that no right acquired or accrued, or penalty or forfeiture incurred, prior to October 1, 1892, should be affected by the repeal of the laws theretofore in force, but otherwise manifestly subjects policies then in force to the act of 1892, in respect of payment of premiums thereafter falling due. This act of 1892 excepts from its terms policies which are "term insurance contracts for one year or less." The policy in suit is, as we have endeavored to show, a term insurance contract for one year, and therefore falls within the exception of the section. McDougall v. Society, 135 N. Y. 551–556, 32 N. E. 251; Baldwin v. Society (Sup.) 48 N. Y. Supp. 463. At least three semiannual premiums fell due after the passage of this act of 1892. If this act did not require that notice should be given prior to the falling due of any premium, or notice of any default in payment, as did the act of 1877, then no notice was necessary, except such notice as the contract itself requires.

In the case of Baldwin v. Society, supra, there was involved a policy issued in 1885. It was kept alive by payments of premiums until January, 1895. A call for a premium due February 9, 1895, was sent out. The assured died February 19, 1895, without having paid the premium thus called. It was, among other things, contended by the counsel for the beneficiary that this notice was not a sufficient compliance with the terms of this act of 1892, the act in force when the premium fell due. To this the court replied by saying:

"The policy, however, falls within the exception of the section,—that is, it is either a policy issued upon the payment of a monthly premium, or it is a term insurance contract for a year or less, in which case no notice is necessary; and in this view we are sustained by the decision of the court of appeals in McDougall v. Society, 135 N. Y. 551, 556, 32 N. E. 251. Judgment should be entered for the defendant."

It is not a question as to whether this policy was "one issued or renewed" after the passage of the act of 1892. It had been kept alive by force of the act of 1877 so long as that statute regulated the subject of forfeitures and notices. When the act of 1877 was repealed by the act of 1892, the whole subject was thereafter regulated only by the latter act. If it did not prescribe some notice in respect to the forfeiture of policies for the term of one year, the only notice

which the insured could demand in respect of premiums which should fall due thereafter would be such notices as the contract itself prescribed or which had otherwise become a term of the agreement between the parties. In this view of the case, the policy lapsed by reason of the nonpayment of the premiums which fell due after the passage of the act of 1892, notwithstanding no notice was given.

But the very zealous and learned counsel for the beneficiary have very strongly urged that, as this contract was made while the act of 1877 was in force, the provisions of that act became so incorporated into the contract as to become a part of the contract itself, and that the provisions of the act of 1877, prohibiting a forfeiture of the interest of the insured in the policy without a notice, according to the terms and conditions of the statute, became as much a term and stipulation of the policy as if inserted therein by the parties themselves. Upon this assumption, they insist that the act of 1877 could not be altered or amended or repealed so as to subject the contract to forfeiture without the statutory notice, as such repeal or amendment would impair the obligation of the contract. To this we cannot agree. The contract which the parties themselves made was one for an insurance for a single year, with the privilege of renewal for succeeding years upon condition of the payment of an additional premium upon the day named in the policy. Failure to renew it according to the condition of the contract put an end to the policy, without more ado. So with respect to the payment of the second half of the yearly premium. If not paid when due, the contract was thereby terminated. The act of 1877 interposed, and for the benefit of the insured provided that the stipulations of the contract in respect to the termination of the policy should not be enforced unless notice of a certain character had previously been given by the insurer. The statute did not provide that the interest of the insured shall not be forfeited upon failure to renew the policy by the payment of the stipulated premium, but that the forfeiture should not be declared or be effective unless the default in the payment of the stipulated premium should occur after a particular notice had been given prior to the stipulated day of payment, or a default should continue after a particular notice and demand for payment had been given. Thus the law stepped in, and in effect said: "You shall not enforce the stipulations into which you have entered in respect to the effect of a default in payment of premiums, unless you first comply with this statute by giving the notice herein required." The subsequent repeal of this statute does not impair the obligation of the contract in respect to premiums which should mature thereafter. The repeal simply permits the contract into which the parties had entered to be enforced according to its own terms and conditions. "The laws with reference to which the parties must be assumed to have contracted  *  *  * were those which, in their direct or necessary legal operation, controlled or affected the obligations of such contract." Insurance Co. v. Cushman, 108 U. S. 51–65, 2 Sup. Ct. 236. Laws repealing laws which prevent the operation of contracts otherwise within the competency of the parties, and permit their enforcement according to their terms, have never been regarded as

laws impairing the obligation of contracts, or as an impairment of vested rights. Insurance Co. v. Cushman, 108 U. S. 51–65, 2 Sup. Ct. 236; Ewell v. Daggs, 108 U. S. 143, 2 Sup. Ct. 408; Gross v. Mortgage Co., 108 U. S. 477, 2 Sup. Ct. 940; Butler v. Association, 97 Tenn. 679, 37 S. W. .385; Curtis v. Leavitt, 15 N. Y. 15, 85; Lewis v. McElvain, 16 Ohio, 347; Trustees v. McCaughy, 2 Ohio St. 152; Cooley, Const. Lim., side pages 293–378.

Judge Hammond, who heard· this case below, very admirably answered the argument that the act of 1877 so entered into the contract as to make its repeal an impairment of its obligations, by saying:

"If the provisions of the statute as to notice had been written in the policy as agreements of the parties, that would have been their contract, and, of course, the law could not make another contract for them. Wherefore, it would be enforced by the courts as the agreement of the parties; but the statute did not undertake to make a contract of insurance for the parties. It was only a statutory regulation for the government of insurance companies, compelling them to give notice as required by the act of the nonpayment of premiums before they would be allowed to declare a policy forfeited according to its stipulations. It was a regulation that the legislature had a right to make. It was a beneficent regulation for the relief against a forfeiture created under the contract, which it·was entirely competent for the legislature to withdraw; alter, or amend, as to it might seem best. Surely, if we turn the principle contended for the other way, its operation would be denied by the plaintiff and her counsel. That is to say, if an insurance company should contend that at the time of the passage of the act it had already issued a policy defining the terms of forfeiture, and that it was not within the power of the legislature to impair the obligation of that contract by importing into it a different stipulation or provision as to the conditions of forfeiture, the beneficiaries would deny that such legislation unconstitutionally impaired the obligation; but, if the legislature has the power to import into an existing contract such a regulation for giving notice without impairing the obligation of the contract as to the insurance company, it has the right to take it away by repeal, without impairing the obligation as to the beneficiary."

In Gross v. Mortgage Co., 108 U. S. 477–488, 2 Sup. Ct. 946, the validity of a mortgage was involved which had been made at a time when the mortgage was invalid under the existing local law, but which was subsequently validated. ·The validating act was said to be repugnant to the constitution of the United States, as impairing the obligation of the contract. To this the court said:

"That the act in question is not repugnant to the constitution, as impairing the obligation of a contract, is, in view of the settled doctrines of this court, entirely clear. Its original invalidity was placed by the court below upon the ground that the statutes and public policy of Illinois forbade a foreign corporation from taking a mortgage upon real property in that state to secure a loan of money. Whether that inhibition should be withdrawn was, so far at least as the immediate parties to the contract were concerned, a question of policy, rather than of constitutional power. When the legislative department removed the inhibition imposed, as well by statute as by the public policy of the state, upon the execution of a contract like this, it cannot be said that such legislation, although retrospective in its operation, impaired the obligation of the contract. It rather enables the parties to enforce the contract which they intended to make. It is, in effect, a legislative declaration that the mortgagor shall not, in a suit to enforce the lien given by the mortgage, shield himself behind any statutory prohibition or public policy which prevented the mortgagee, at the date of the mortgage, from taking the title which was intended to be passed as security for the mortgage debt. We repeat here what was said in Satterlee v. Matthewson, 2 Pet. 380, and, in substance, in Watson

v. Mercer, 8 Pet. 88, that 'it is not easy to perceive how a law, which gives validity to a void contract, can be said to impair the obligation of that contract.'"

In Ewell v. Daggs, 108 U. S. 143–151, 2 Sup. Ct. 413, a statute which declared all contracts voidable for usury was repealed. It was held that the repeal of the statute deprived the debtor of the statutory defense, and was valid, as not impairing the obligation of the contract. Touching the objection to the repeal of such statutes as depriving existing contracts of a statutory defense, the court said:

"Independent of the nature of the forfeiture as a penalty, which is taken away by a repeal of the act, the more general and deeper principle on which they are to be supported is that the right of a defendant to avoid his contracts is given to him by statute, for purposes of its own, and not because it affects the merits of his obligation; and that whatever the statute gives under such circumstances, as long as it remains in fieri, and not realized by having passed into completed transaction, may, by a subsequent statute, be taken away. It is a privilege that belongs to the remedy, and forms no element in the rights that inhere to the contract. The benefit which he has received as the consideration of the contract, which, contrary to law, he actually made, is just ground for imposing upon him, by subsequent legislation, the liability which he intended to incur. That principle has been repeatedly announced and acted upon by this court. Read v. City of Plattsmouth, 107 U. S. 568, 2 Sup. Ct. 208; and see Lewis v. McElvain, 16 Ohio, 347; Johnson v. Bentley, Id. 97; Trustees v. McCaughy, 2 Ohio St. 152; Satterlee v. Matthewson, 16 Serg. & R. 169, same case, in error, 2 Pet. 380; Watson v. Mercer, 8 Pet. 88. The right which the curative or repealing act takes away in such a case is the right in the party to avoid his contract, a naked legal right, which it is usually unjust to insist upon, and which no constitutional provision was ever designed to protect. Cooley, Const. Lim. 378, and cases cited."

There was no error in sustaining the demurrer to the plaintiff's declaration, and the judgment is accordingly affirmed.