[No. 12714. Department One. July 22, 1915.]

LILLY NELANDER BOUTIN, *Respondent*, v. NATIONAL
CASUALTY COMPANY, *Appellant*.[1]

INSURANCE—ACCIDENT INSURANCE—POLICY—WAIVER OF CONDITIONS —ACCEPTANCE OF OVERDUE PREMIUMS. An accident policy did not lapse for failure of the insured to pay the premium monthly in advance, as required by the policy, where it appears that the insurance company employed a collector who for three years had called on the first day of the month or shortly thereafter and collected and receipted for the premiums; that the money was always ready for him when he called, and was ready on the first day of the last month, but the collector did not call for it until the third of the month, the insured having died the day before; since a course of conduct had been established upon which the insured had a right to rely.

Appeal from a judgment of the superior court for King county, Smith, J., entered December 18, 1914, upon the

[1]Reported in 150 Pac. 449.

verdict of a jury rendered in favor of the plaintiff by direction of the court, in an action on an insurance policy. Affirmed.

*Edward Judd* and *Victor M. Place*, for appellant.

*Elias A. Wright* and *Sam A. Wright*, for respondent.

MOUNT, J.—This action was brought to recover upon an insurance policy. The case was tried to the court and a jury. There was no dispute upon the facts, and the court, at the conclusion of the evidence, directed a verdict in favor of the plaintiff. Thereafter a judgment was entered in accordance with the verdict. The defendant has appealed.

The facts are as follows: On the 30th day of March, 1910, the appellant issued to one Henry Nelander its policy of insurance, which provided that, in case of death by accident, the beneficiary should receive the sum of $500, together with an additional ten per cent in case the premiums had all been paid for one year immediately preceding the occurrence of the loss. The beneficiary named in the policy was Nelander's daughter, the respondent in this case.

The policy provided that the insurance company,

"Does hereby insure the person described in said application, subject to the provisions and conditions herein contained and endorsed hereon, from 12 o'clock noon (Pacific) Standard Time, of the day this contract is dated, until 12 o'clock noon, Standard Time, of the first day of May, 1910, and for such further monthly periods, stated in the renewal receipts, as the payment of the premium specified in said application will maintain this policy and insurance in force."

Upon the face of the application is a recitation as follows:

"Will pay premiums to Seattle office. Monthly premium $1.70, which I agree to pay in advance without notice."

On the back of the policy is a statement as follows:

"If the payment of any renewal premium shall be made after the expiration of this policy, or of the last renewal receipt, neither the assured nor the beneficiary will be en-

titled to indemnity for any accidental injury happening between the date of such expiration and noon (Standard Time) of the day following the date of the receipt of such renewal payment at the home office; nor for any illness originating before the expiration of thirty days after the date of such renewal payment. The acceptance of any renewal premium shall be optional with the company."

At the time the policy was delivered, a receipt book was left with the policy holder, which book contained blank spaces for the payment of premiums and for the signature of the collector. On the back of this little book was a notice stating:

"Premiums are payable in advance, without notice. If you wish to be in good standing you must at all times pay promptly on or before the first day of each month as specified in policy, as the company will not pay benefits for disability commencing when the premiums are unpaid.

"Premiums should be paid only to the duly authorized collector, or at the home office, and if you pay otherwise, you do so at your own risk and must stand the loss, if any."

On the face of this book is a statement as follows:

"This book must always be presented to local collector for signature when paying premiums. If he cannot be found, send your premiums with this book to the home office at Detroit, Mich."

In Seattle, where the insured lived, the company maintained a local collector, who made it a practice each month to call at the home of the insured and receive the premiums. When he received a premium he would indorse the same upon the book above referred to, and sign a receipt upon the book. The premiums had been paid upon this policy for a period of three years. They were regularly indorsed upon the book. Twenty-one of these appear to have been made upon the first day of the month; five appear to have been made upon the second day of the month; two upon the third of the month; two on the fourth of the month; one upon the fifth; one upon the eleventh; one upon the twelfth; and one upon

the 13th of the month. Two entries appear to have been the collection of two months' premiums at one time; the day of the month is not shown. This book was retained by the beneficiary in her possession; and the collector testified that when he called for the premiums the money was always ready for him; that he called for premiums at his convenience. The evidence shows that it was the custom of the beneficiary, during the latter part of the month before the premium became due, to always have the money ready, which she placed in a receptacle, awaiting the call of the collector for it.

On October 1, 1913, the premium was paid as usual on the first day of the month. The first day of November, 1913, fell upon a Saturday. The money was ready for the collector at that time, but he did not appear. On the second day of November, 1913, the insured died from an accident which was covered by the policy. On the next day, November 3, the collector called for the premium, when he was informed that the insured had died the day before. The collector receipted the book, but refused to take the money, saying that he would report the matter to the company and if it was all right he would then take the money. He did report the matter to the company, and the company refused to receive the premium, and denied liability upon the policy. This action was thereupon brought.

This case is controlled by the case of *Morgan v. Northwestern Nat. Life Ins. Co.*, 42 Wash. 10, 84 Pac. 412, which was similar to the case now under consideration, and where an instruction to the jury was approved to the effect that if the jury found that, by a course of dealing, a prudent person was led to believe, and did believe, that she was making payments according to the terms of a policy and that she so understood; that the custom and conduct of the company in receiving the payments without objection were calculated to lead an ordinarily prudent person to understand and believe that she was paying the premiums in accordance with the provisions of the policy, that in such case the plaintiff

was entitled to recover. A number of cases are there considered, and at the close of the opinion we there said:

"It was held in *Hartford etc. Ins. Co. v. Unsell,* 144 U. S. 439, 12 Sup. Ct. 671, 36 L. Ed. 496, that a life insurance company, whose policy provides for the payment of premiums at stated times, and further that the holder agrees and accepts the same upon the express condition that, if the monthly dues are not paid to said company on the day due, then the certificate shall be null and void and of no effect, may nevertheless, by its whole course of dealing with the assured, and by accepting payments of overdue sums without inquiries as to his health, give him a right to believe that the question of his health would not be considered, and that the company would be willing to take his money shortly after it had become due, and such a course of dealing may amount to a waiver of the conditions of forfeiture. To the principles announced in those cases, we unhesitatingly give our indorsement."

The same is true in this case. While the insurance was from month to month as the premiums were paid, there was no dispute of the fact that the insurance company had employed a collector to collect the premiums upon this policy, and many other policies of the same kind in that neighborhood; and that it was his custom to apply to the policy holders on the first of the month, or within a few days thereafter, and collect the premiums thereon. This was such a course of conduct as would lead an ordinarily prudent person to believe that the company was not standing strictly upon the provisions of the policy that the premium must be paid upon the first of the month. The fact is not disputed that the beneficiary in this case was always ready with the money for the premium which was due upon the first of the month. She waited for the collector to appear and receive the money. The collector, for a period of three years, had made it a custom to call upon the first of the month, or soon thereafter, and receive the money. It is plain, it seems to us, that this established a course of conduct upon which the assured and the beneficiary had a right to rely. If the collector who was em-

ployed by the insurance company neglected to call upon the
first of the month and receive the premium, it was his fault
and not the fault of the beneficiary or the assured.   To hold
under these circumstances that the policy had lapsed would,
we think, amount to a great miscarriage of justice.

The appellant relies for reversal upon the case of *Popovitz
v. United States Health & Accident Ins. Co.*, 78 Misc. Rep.
148, 137 N. Y. Supp. 788.   It does not appear from the
opinion in that case that any course of conduct outside the
strict terms of the policy had been established by the com-
pany.   It does appear that the monthly premiums were not
paid when they were due.   It may be conceded that, if,
through the fault of the insured or the beneficiary under the
policy, the premiums were not paid, the policy would lapse.
But where the fault is the fault of the insurance company, and
not the fault of the assured or the beneficiary, certainly the
policy ought not to lapse.   We think the *Popovitz* case is not
controlling here.

The appellant also cites and relies upon the case of *Thomp-
son v. Fidelity Mut. Life Ins. Co.*, 116 Tenn. 557, 92 S. W.
1098, 115 Am. St. 823, 6 L. R. A. (N. S.) 1039.   That case
is a well reasoned case, but the court in its opinion says:

"Under the above authorities, before complainant can re-
cover in this case, she must show:

"(1) That the course of dealing between the insurer and
the insured, in reference to the acceptance of overdue premi-
ums, amounted to a custom or habit.

"(2) That by reason of this course of dealing, the insured
was justified in believing that the company would not insist
upon a forfeiture for his failure to pay his subsequent premi-
ums *ad diem*.

"(3) That the insured did actually believe that he could
postpone the payment of his future premiums after maturity
without the risk of a forfeiture.

"(4) That the insured acted upon this belief in this in-
stance, and that by reason thereof, did not pay the premium
due December 30, 1904, at its maturity."

This rule applies precisely to the case now in hand. The course of dealing between the insurance company and the beneficiary clearly amounted to a custom and a habit. The beneficiary in this case was certainly justified in believing that the company would not insist on a forfeiture when its agent employed to make the collections failed to appear and receive the money at the proper time, especially when he knew the money was always ready and waiting for him on the first of the month. In this case the beneficiary did not postpone the payment of the premium, but was ready at all times to pay the same; and the failure to pay on the day it became due was the fault of the collecting agent and not the fault of the beneficiary. We think the two cases relied upon by the appellant do not control in this case, but that the case is controlled entirely by the rule in the *Morgan* case, *supra.*

The judgment is therefore affirmed.

MORRIS, C. J., CHADWICK, HOLCOMB, and PARKER, JJ., concur.