HENRIETTA OWENS, APPELLEE V. TRAVELERS INSURANCE COMPANY, APPELLANT.

FILED MARCH 18, 1916. No. 18767.

Insurance: PREMIUMS: PAYMENT: WAIVER. In an accident insurance policy, a provision requiring payment of the premium in advance may be waived by a course of dealings in which insured, through a series of renewals, paid each renewal premium long after it became due, having been thus induced to believe that payment in advance would not be required.

APPEAL from the district court for Douglas county: ALEXANDER C. TROUP, JUDGE. Affirmed.

*Gurley, Woodrough & Fitch,* for appellant.

*James C. Kinsler* and *Dunham & Aye, contra.*

ROSE, J.

This is an action by plaintiff, as beneficiary, to recover $5,000 upon an accident insurance policy issued by defendant upon the life of her husband, John S. Owens. The policy was issued September 30, 1910, for a term of three months, in consideration of a premium of $6.25, and provided that "it may be renewed, subject to all the provisions of the policy from term to term thereafter by the payment of the premium in advance." Owens was accidentally killed October 24, 1912. The premium for the term commencing September 30, 1912, had not been paid, and defendant denied liability on the ground that the policy had lapsed. Plaintiff alleged that defendant had waived the provision of the policy requiring payment of the premium in advance. A verdict was rendered in plaintiff's favor for $5,586.92 and judgment entered thereon. Defendant has appealed.

The controlling question on appeal is whether defendant waived the provision of the policy requiring payment of the premium in advance. The evidence shows that defendant maintains a general branch office in Omaha. The cashier is appointed by, and acts under the direction of, the home office in Hartford. There is a general manager in Omaha who has charge of writing insurance. To procure applications a number of agents are employed. While they remain in the employ of defendant, they collect the premiums upon policies procured by them. After they leave the employ of defendant the cashier makes the collections. Collections are reported to the cashier, who enters payment on a card record and makes daily reports to the home office. Receipts for premiums, countersigned by the cashier, are delivered to the agents at the beginning of the term, with instructions to return them to the branch office within 60 days or to bring in the money. If receipts are not returned

within 60 days, the agents must pay the premiums. Policies were not canceled for nonpayment of the premium until 60 days after due. D. J. Sinclair, an agent of defendant, solicited Owens to make application for an accident policy. Owens was not ready to take a policy, but did so when the agent informed him that he need not pay the premium for 60 days. Though the policy was issued September 30, 1910, the premium was not paid until December 27, 1910. The insurance was renewed from time to time, but the premiums were not paid until the expiration of periods extending from 65 to 87 days after due. Sinclair testified that he generally called on Owens pay-day, leaving the receipt for the premium whether then paid or not, and making collection, if not paid, later. Plaintiff testified that pay-day was the sixth of the month, and also that she saw Sinclair deliver a receipt to her husband 30 days or more after the premium became due. Sinclair left the employ of defendant in August, 1912, but it does not appear that Owens was aware of that fact, nor of the rule that the cashier made the collections after the soliciting agent left. Demand for payment of the premium due September 30, 1912, was made by a letter dated September 17, 1912, signed by the cashier, and containing the following: "Renewal premium of $6.25 on Policy No. E-181,706 issued by the Travelers Insurance Company of Hartford, Connecticut, is due on the 30th day of September, 1912. Please forward remittance in season to reach my office on or before the date above named." The premium was overdue 24 days when Owens was killed. The morning after his death, the premium was received without knowledge of that fact, and defendant tendered it back.

The law applicable to this case has been stated in *Insurance Co. v. Wolff*, 95 U. S. 326, 330, as follows:

"The principle that no one shall be permitted to deny that he intended the natural consequences of his acts when he has induced others to rely upon them is as applicable to insurance companies as it is to individuals, and will serve to solve the difficulty mentioned. This principle is

one of sound morals as well as of sound law, and its enforcement tends to uphold good faith and fair dealing. If, therefore, the conduct of the company in its dealings with the assured in this case, and with others similarly situated, has been such as to induce a belief that so much of the contract as provides for a forfeiture if the premium be not paid on the day it is due would not be enforced if payment were made within a reasonable period afterwards, the company ought not, in common justice, to be permitted to allege such forfeiture against one who has acted upon the belief, and subsequently made the payment. And if the acts creating such belief were done by the agent and were subsequently approved by the company, either expressly or by receiving and retaining the premiums, the same consequences should follow."

For nearly two years defendant had accepted from Owens premiums 65 days or more after they had become due. These payments were entered by the cashier on the card record of the branch office and reported to the home office. Defendant knew the course of dealings with Owens. While there is testimony that the premium receipts were delivered to Owens and payment made later, there is also testimony from which the jury might infer that these receipts were not delivered in some instances until 30 days or more after the premium had become due. When Owens was killed the premium had been unpaid but 24 days. It had been the practice of defendant to send the agent to Owens to collect the premium. It is not shown that Owens knew that the agent had left the employ of the insurer, or that the custom to call for the premium would be abandoned, or that collection would thereafter be made by the cashier. The notice from the cashier that the premium was due September 30, 1912, and asking for a remittance on or before that date, in view of the course of dealings described, did not necessarily amount to notice that payment at a later date would be rejected and the former practice abandoned. Defendant was willing to, and did, receive payment of the premium. While this was not of

itself a waiver, since defendant did not then know of the death of the insured, it is proof tending to show that defendant had not changed its course of dealings and was willing to receive the premium after it had become due and after the date mentioned in the cashier's notice. Under the evidence 'it was at least a question for the jury whether "the conduct of the company in its dealings with the assured in this case, and with others similarly situated, has been such as to induce a belief that so much of the contract as provides for a forfeiture if the premium be not paid on the day it is due would not be enforced if payment were made within a reasonable period afterwards." This view is in harmony with adjudicated cases: *Cornell v. Travelers Ins. Co.,* 104 N. Y. Supp. 999 (affirmed without opinion in 192 N. Y. 587); *Morgan v. Northwestern Nat. Life Ins. Co.,* 42 Wash. 10, 7 Ann. Cas. 382; *Boutin v. National Casualty Co.,* 86 Wash. 372.

The instructions of the court are in harmony with the views herein expressed. There is no error in the record, and the judgment is

AFFIRMED.

SEDGWICK, J., not sitting.