This is an appeal from a judgment of the district court in favor of the plaintiff as beneficiary under a life insurance policy.
The facts are stipulated as follows: Two policies of insurance, Exhibits A and B, dated May 12, 1914, were, some days thereafter, delivered to Dr. James Halliday at Mohall, North Dakota; the *Page 468 
premiums were due according to the face of the instruments, on May 12, each year, with thirty-one days of grace. The insured paid the premiums from 1914 to 1920, inclusive. The premium on Ex. A was $61.32 and on Ex. B $40.88, both due May 12, 1921, according to the face of the contract; the dividend on the former policy, due at the same time, was $11.58 and on the latter $7.72. During the existence of the policies, the dividends were applied upon the premiums as they fell due and the balance was paid by the insured. The insured made a written election for the payment of dividends in this manner for the years 1915, 1916, 1917; for 1918, 1919, and 1920, it appears that the insured sent a check for the balance, after deducting the dividend, without a written election and this mode of payment was accepted by the insurer. About May 10, 1921, the insured made arrangements with the cashier of a bank at Mohall to transmit the premiums to the defendant; this was not done. Thereafter, on June 21, 1921, the insured died at Grand Forks, North Dakota, and on June 23, notice of death was received by the defendant. It is stipulated that immediately after the insured had arranged for the payment of the premium as above stated, he became ill and unable to attend to his business. On July 28, following, the defendant issued its dividend checks payable to the insured, and transmitted them addressed to him at Mohall; and on August 6, the checks were returned by the plaintiff. On August 8, 1921, the beneficiary plaintiff herein, widow of the insured, sent two bank drafts to cover the premium due on the policies, but the defendant refused to accept payment, claiming that the policies had lapsed prior to the death of the insured.
It is stipulated that the amount of dividends due on the policies on May 12, 1921, "if applied to the payment of premium of one policy would be sufficient to pay one quarterly premium thereon at the society's rate, leaving a balance equal to or greater than the pro rata portion of the annual premium for the period intervening between May 12, 1921, and June 21, 1921, if such balance under the terms of the policy could be applied for less than a quarterly premium." It was stipulated, likewise, that the quarterly premium upon exhibit A would be $16.25, and the quarterly premium upon exhibit B would be $10.33. Exhibit A is for $3,000 and exhibit B for $2,000.
The policy is a fifteen year "term" policy, "nonrenewable. — *Page 469 
Convertible." It is either the form of policy standardized in § 6635, Comp. Laws 1913, and which appears on page 1556 of the Compiled Laws, or the standard policy prescribed in § 6635, beginning on page 1558 of the Compiled Laws. The policies in suit do not strictly comply with either of the forms adverted to; the first is an ordinary term insurance form, without the privilege of renewal or conversion; the second is substantially the same as the first, except that it contains a clause permitting the insured either to renew or convert the policy. Both policies in suit contain the conversion privilege, but neither gives the right to renew. We think that the policies must be construed to be term policies of the first type, with the privilege of conversion and exchange within seven years.
Each policy contains the following "Except as herein provided the payment of a premium or installment thereof shall not maintain the policy in force beyond the date when the necessary premium or installment thereon is payable." This is the language of the statutory form. See § 6635, page 1556, Comp. Laws 1913. Defendant contends that this is a forfeiture clause.
Each policy provides that the insured shall participate in the distribution of the surplus, that dividends are payable in cash, in the absence of election, and that it may be reinstated at the request of the insured at any time within the period of fifteen years, being, in this respect, more liberal than the statutory form which limits the right of reinstatement to the first three years of the term; and which also provides that in no event need the privilege of reinstatement be granted in policies for terms of less than twenty years.
The policy provides, substantially in the language of § 6635, subdivision 3, Comp. Laws 1913, that it shall constitute the entire contract between the parties; that the application is a part of the contract; and that the insurance "is granted in consideration of the payment in advance of (the premium) and the payment annually thereafter of a like sum upon each 12th day of May, during the term of fifteen years, or until the prior death of insured." The contract expressly states that it is "based upon the payment of premiums annually; but premiums may be paid, subject to the society's written approval, in semi-annually or quarterly installments. . . ." The application, which is a part of the contract, contains the following clause: "I hereby agree that *Page 470 
the policy issued hereon shall not take effect until the first premium has been paid during my good health." The court found that the premium was paid and the policy delivered some days after the date it bears, namely, May 12th, 1914, but the record does not show the date on which the premium was paid and the insurance policy became effective as protection to the insured.
It was the contention of the plaintiff below, and is here (1) that there is no forfeiture clause in the policy and that, therefore, the policy was in full force at the time of the death of the insured; (2) that if it be held that the policy contains a forfeiture clause, the defendant is liable notwithstanding, because, (a) it appears that the policy does not take effect until the payment of the first premium and that the first premium was paid sometime after the 12th of May, 1914. From this it follows, the argument runs, that the thirty-one days of grace must be calculated, not from the date of the policy, May 12, but from the date when the premium was paid and the policy became operative as a contract of insurance; (b) the defendant had in its possession money in the form of dividends and $1 overpayment which should have been applied to prevent a forfeiture; (c) that under the law, § 4886, Comp. Laws 1913, the insured was entitled to extended insurance, notwithstanding the absence of such a provision in the policy.
In behalf of the defendant and the appellant the contention is that the insured was not entitled to extended insurance, either under the contract or under the statutes; that the provision for extending insurance is not required to be inserted in term policies, or in term policies with a right to renew and change; that § 6635, pages 1557 and 1560, expressly exempts term insurance policies of less than twenty years duration from the requirement that the contracts shall include a clause providing for continuance of insurance in case of lapse; and that subdivision 8, § 6635c, Comp. Laws 1913, evinces a like intention by specifically providing that this requirement shall not apply to term insurance contracts of twenty years or less; and that the contract expressly stipulated for the payment of the premium annually with the privilege of quarterly payment if agreed to in writing by the company; but that no agreement was ever made for less than annual payments. It is then urged that inasmuch as no payment of any sort was made, not even sufficient for a quarterly payment on both policies, the policies *Page 471 
had lapsed at the time of the death of the insured, under the clause, supra.
Counsel for the appellant base much of their argument on the assumption that the policy in suit is not distinguishable from policies under consideration in many of the authorities most strongly relied on by them, like Rosenplanter v. Provident Sav. Life Assur. Soc. 46 L.R.A. 473, 37 C.C.A. 566, 96 Fed. 721; McDougall v. Provident Sav. Life Assur. Soc. 135 N.Y. 551, 32 N.E. 251. The policy in suit is not a renewable policy; it is a term policy, as prescribed in § 6635, page 1556, Comp. Laws 1913, with the extra privilege of conversion. It expressly stipulates upon its face that it is nonrenewable but convertible.
We are of the opinion that the contention of counsel for the appellant to the effect that the privilege of extended insurance was not accorded under this policy, must be sustained. The standard form expressly provides that the stipulation for continuance of insurance in case of lapse need not be inserted in this type of contract unless it runs for more than twenty years; and § 6635c, subdivision 8, likewise provides that such a clause need not appear in a term policy. Counsel for respondent relies on § 4886, Comp. Laws 1913, which provides for automatic or extended insurance in case of default. This provision is couched in broad and general terms to the effect that in case of default in paying premium "on any policy" paid up or extended insurance shall be accorded the insured. We are impelled to the conclusion that this section refers only to insurance policies for a term of more than twenty years. Section 4886, in all material respects, is almost identical in language with similar matters in subdivision 8 of § 6635c, Comp. Laws 1913, relating to extended insurance in case of default, provision for which is, in the latter sections, expressly dispensed with in term insurance policies of twenty years or less duration. Section 4886 was enacted in 1907 as § 4 of chapter 142; § 6635, providing the standard form of insurance policy, and § 6635c, were enacted as respectively as §§ 2 and 5 of chapter 140, Sess. Laws 1907.
The record is silent upon a fact which, according to some authorities, may become of controlling importance when the insurer claims that a policy has lapsed. The stipulated facts disclose that the policy is dated May 12, 1914; that a grace of thirty-one days was allowed thereafter *Page 472 
within which to pay the annual premium; that the policy was not to become operative as a contract unless and until the premium was paid, during the good health of the insured. It appears that the premium was paid and the policy delivered some days after the date of the policy, but how many days, the testimony does not show. Under the terms of the contract and by reckoning the period of grace from May 12, the insured had until June 12 to pay the premium, and had the premium been tendered at any time between the 12th of May and the 12th of June, or on the latter date, a lapse or forfeiture could not have been successfully asserted. Nine days thereafter, to wit: June 21st, the insured died. If the policy was not delivered and the premium paid within nine days after the date it bears, that is, if it was delivered on or after the 21st day of May, 1914, there is authority for the proposition that the period of grace should be calculated not from May 12, the date of the policy, but from May 21st, the date on which it became effective as a contract of insurance. See Landrigan v. Missouri State L. Ins. Co. 211 Mo. App. 89, 245 S.W. 382, and same case reported in ___ Mo. App. ___, 234 S.W. 1042; Parham v. National Relief Assur. Co. 33 Ga. App. 59, 125 S.E. 519; Stramback v. Fidelity Mut. L. Ins. Co. 94 Minn. 281, 102 N.W. 731, the authorities upon this question are eollected in a note in 6 A.L.R. 774, supplemented by a later annotation in 32 A.L.R. 1253.
In the absence of facts or circumstances showing a waiver, express or implied, of that stipulation in the policy the insurer could not be compelled to accept payment of less than the installment due on May 12, which was the full annual premium. The insured had the privilege of paying premiums quarterly, semi-annually, or annually; he had elected to pay the premium annually and contracted accordingly. Until that stipulation was abandoned or waived, either expressly by agreement or impliedly by custom or the course of conduct of the defendant, it was incumbent upon the insured to pay the premium in full when due.
The policy stipulates for payment of the premium annually and in advance. We shall assume, without deciding, that failure to pay as agreed, or within the days of grace, entitles the defendant to declare the policy forfeited on account of default. It is well settled that custom or an insurer's course of conduct may afford a basis for a reasonable *Page 473 
excuse for not paying the premium at the time or in the manner stated in the policy, when such custom or course of action is not within the express terms of the contract. See Mutual Reserve Fund Life Asso. v. Tuchfeld, 86 C.C.A. 657, 159 Fed. 833; Bankers Health Life Ins. Co. v. Givvins, 12 Ga. App. 378, 77 S.E. 203; Crosby v. Vermont Acci. Ins. Co. 84 Vt. 510, 80 A. 817; Boutin v. National Casualty Co. 86 Wn. 372, 150 P. 449.
We think that the facts in the cases at bar clearly show a course of conduct or custom with reference to the manner of paying the premium which precludes the insurer from asserting a forfeiture. Up to and including the year 1917, the defendant notified the insured of the amount of the annual dividend, which was due and payable on May 12, each year, and the insured executed a written option, attached thereto, electing to have the dividend applied on the premium. During the years 1918, 1919, and 1920, this method of doing business was seemingly abandoned, and, as the stipulation of facts recites, the "insured deducted from the premiums due on said policies the amount of the dividends, remitting to the defendant the net balance and the defendant accepted the net balance in full payment of said premium." The record supports the inference that after 1917 the insurance company, instead of waiting for a written election by the insured, in conformity with the terms of the policy, credited the dividends upon the premiums, when due or within the period of grace, and that, consequently, the policy was not, and could not be, without notice to the insured, forfeited during the term for which the dividend paid the premium. Whether the manner of doing business was, in 1918 and later years, changed as a result of express agreement, or otherwise, the facts do not show. The record does show that on May 12, 1921, the defendant owed the insured $11.58 on Ex. A, and $7.72 on Ex. B; that a custom outside the express terms of the contract, had somehow grown up whereby the company credited these amounts upon the premiums without written election; and that the insured could rightfully assume that there would or could be no forfeiture of the policy during the period for which such dividends were sufficient to pay for the risk. The stipulation shows that a prorating of the dividends would carry the policies in force beyond the date of the death of Dr. Halliday, if application could be made in that manner under the terms of the contract. Ætna L. Ins. *Page 474 
Co. v. Hartley, 24 Ky. L. Rep. 57, 67 S.W. 19; Citizens' L. Ins. Co. v. Boyle, 139 Ky. 1, 129 S.W. 308, and see American Nat. Ins. Co. v. Mooney, 111 Ark. 514, 164 S.W. 277. We think the record shows that the defendant actually elected to and did apply the dividends upon the premiums, in conformity either with express agreement or with custom. The dividends were due May 12, 1921; the defendant did not remit to the insured, either then or during the period of grace. It kept the money in its possession throughout May and June, 1921; and did not attempt or offer to pay until July 28, 1921, more than two and one half months after the debt to the insured came into existence, more than a month and one half after the period of grace had expired, and five weeks after they knew that the insured had died and when the beneficiary was pressing her claim under the policy. Under facts in some respects similar to those in the case at bar, the court said in Ætna L. Ins. Co. v. Hartley, supra:
"Therefore we conclude the insurance company owed the insured on the 10th day of March the sum of $5.65. This sum the insurer could have paid direct to the insured; or, if it chose to do so, it might credit it upon his premium that day due. It had elected to credit it upon the premium, and while, undoubtedly, it could not have been compelled to have accepted less than the full annual premium in order to continue the policy in force, and while it could not have been compelled to have applied this dividend upon the premium, yet, having elected to do so, and having actually done so, as is shown by its letter to the assured dated the 19th day of March, we conclude that it could not, during the time that that sum paid the premium on the policy, declare it to be forfeited for nonpayment of premium."
The policy contains a clause permitting the insured to exchange the policy, within seven years from its register date, for an ordinary life etc., policy. It is then provided: "On such exchange the society will apply 80 per cent of the net value of this policy computed in accordance with the American Experience Table of Mortality, with 3 per cent interest per annum, together with all dividends and accumulations, toward the payment of premiums upon the new policy." This clause is not in the statutory form of term policy for twenty years, or less. From this provision we must assume that the parties considered that the policy had some value in addition to "dividends and accumulations;" and, if *Page 475 
the contention of the appellant be sound, this value was forfeited because of non-payment of premium at the stipulated time. The law regards forfeitures with disfavor. Bucholz v. Leadbetter, 11 N.D. 473, 92 N.W. 830. We do not believe that the defendant can assert a forfeiture in this case.
The judgment is affirmed.
CHRISTIANSON, Ch. J., and BIRDZELL, NUESSLE, and BURKE, JJ., concur.