## ILLINOIS BANKERS LIFE ASSUR. CO. v. PAYNE.

### No. 11901.

Court of Civil Appeals of Texas. Dallas.

March 14, 1936.

Rehearing Denied April 18, 1936.

See, also, (Tex.Civ.App.) 62 S.W.(2d) 315.

Ramey, Calhoun & Marsh, of Tyler, for appellant.

Bishop & Holland, of Athens, for appellee.

LOONEY, Justice.

Mrs. Maude A. Payne, appellee, sued the Illinois Bankers Life Assurance Company, appellant, to recover damages for the alleged wrongful forfeiture by it of a life policy for $2,000 theretofore issued on the life of appellee. Following a general denial appellant pleaded specially that the quarterly premium due October 30, 1930, on the policy was not paid on that date, nor within the 31 days of grace allowed, and that, as authorized by the contract, appellant declared the policy forfeited; and further that appellee had borrowed against the policy and still owed appellant the sum of $822, which was pleaded as an offset in the event of recovery by appellee.

At the conclusion of the evidence, the court directed a verdict for appellee in the following language: "Gentlemen of the jury: It being conclusively shown that defendant has in its hands funds belonging to plaintiff which could have been applied by it on the payment of the premiums which became due October 30, 1930, and a part of which has been so applied, its act in cancelling and declaring forfeited the plaintiff's policy was wrongful and a breach of its contract. And it being also conclusively shown that plaintiff's policy would under its terms have matured on the 30th day of April, 1939, and that after deducting the

sum of money owing by plaintiff to defendant the value of said policy at the time of its breach is the sum of $898.81 for which plaintiff is entitled to recover, you are instructed to return a verdict in favor of plaintiff for said sum of $898.81."

The material questions presented for our consideration are these: (1) Did the evidence justify the assumption that the forfeiture of the policy declared by appellant was unjustified? And if so, (2) did the evidence present a jury question as to the amount of damages?

We think it inferable that the two corporations, the Illinois Bankers Life Association and the Illinois Bankers Life Assurance Company, represented the same interests; that on April 30, 1919, the predecessor company, the Illinois Bankers Life Association, issued its policy for $2,000, insuring the life of appellee, which was in good standing on July 30, 1930, when appellant, having theretofore perfected organization, induced appellee to exchange said policy for the policy in suit, under the terms of which appellee was obligated to pay a quarterly premium of $28.02, on the 30th days of July, October, January, and April, 31 days of grace being allowed.

With reference to the payment of the premium, the policy provides: "All premiums are due and payable in advance at the Home Office of the Company, in the City of Monmouth, Illinois * * *. Upon default in payment of any premium * * * this policy shall be null and void and all premiums forfeited to the Company except as herein provided. Premiums may be paid in advance in semi-annual or quarterly installments at the Company's rates therefor, but except as herein provided, the payment of any premium or installment thereof shall not maintain the policy in force beyond the date when the next premium or installment thereof is payable."

In the adjustment resulting from the exchange of the policies, appellee was entitled to a credit of $34.98, left in the hands of appellant available for the payment of the current year's premiums. This is shown by appellant's letter of August 20, 1930, addressed to appellee, as follows: "Dear Madam: Enclosed herewith please find your new Legal Reserve Insurance policy #308069. The Interim Receipt given you by our Special Representative is to be returned in the self-addressed envelop herewith. In accordance with the terms of the contract of insurance, the Association members have been apportioned a fund from the Assessment Association, and there is available as a credit on your exchange policy, in connection with the current year's premium, the sum of $34.98 which will be applied as follows: Used in the current premium settlement $8.74. $8.74 is to be used to reduce the premium due 10–30–30 to $19.28. $8.75 is to be used to reduce the premium due 1–20–31 to $19.27. $8.75 is to be used to reduce the premium due 4–30–31 to $19.27. Thereafter, the regular premiums as shown in the policy will be payable. In event notices which you may receive relative to payment of premiums fail to indicate the credits as shown above, we will appreciate your writing us."

Thus, it appears that after appropriating $8.74 of the fund as a partial payment of the premium due July 30, 1930, there remained in the hands of appellant, unexpended, the sum of $26.24, which had been allocated, but not yet used, to the payment of premiums to mature October 30, 1930, January 30, and April 30, 1931. The premium due October 30th, under the arrangement above set out, was automatically credited with the sum of $8.74, but the balance on this premium was not paid at that time, and with reference to its payment, appellee's son, who transacted her business, testified that on November 26, 1930, he mailed check payable to appellant for $19.28, balance due on the October premium, the evidence also showing that in due course of mail the check should have reached its destination within 48 hours after being mailed, justifying the belief that the premium was fully paid on or prior to October 30th. But the evidence for appellant would have justified a finding that the check was not received until December 6, 1930, seven days after the maturity of the premium; however, for the sake of the discussion, we will assume that the check was not actually received until December 6, 1930, as contended by appellant. Mr. Lilley, head of the conservation department of appellant, wrote appellee December 9th stating that, as the check was received after the grace period allowed, the policy had lapsed, inclosing with the letter a blank application for reinstatement, and retained the check with the intention of accepting same in payment of balance due on the premium should the policy be reinstated. On November 30, 1930, the expiration of the 31 days' grace allowed, appellant had in its possession, belonging to appellee, $26.24, lacking only $1.78 of being the full amount of the October premium, which, in order to

avoid forfeiture, we think, should have been applied on the premium then due. If thus applied, the amount would have paid for insurance for practically the full quarter ending January 30, 1931. We do not think appellant is in position to say that it was not compelled to accept anything less than the full premium, as the arrangement formulated, evidenced by its letter to appellee of August 20, 1930, contemplated the acceptance of partial payments; it being arranged that the fund, $34.98, belonging to appellee, would be distributed as partial payments on premiums to mature during the current year. The above-mentioned amount, to wit, $26.24, being unexpended at the time, enabled appellant to protect itself against any loss of premiums for the period that amount of money would have paid for insurance. Under these circumstances, we think the forfeiture declared was arbitrary, unreasonable, and in law unjustifiable.

The attitude of the law towards forfeitures, generally, is stated in 19 Tex.Jur. § 4, pp. 799, 800, as follows: "Because a forfeiture is a harsh remedy, punitive in its operation, it has become a settled principle that forfeitures are favored neither in law nor in equity as, indeed, they ought not to be. Accordingly the courts have expressed great reluctance to declare and enforce forfeitures if by a reasonable interpretation they can be avoided * * *." In Halliday v. Equitable Life Assur. Society, 54 N.D. 466, 209 N.W. 765, 47 A.L.R. 446, the Supreme Court of North Dakota announced the doctrine that, where the insurer applies a dividend upon the premium due the same day as the dividend, it cannot declare the policy forfeited for the nonpayment of the premium during the time that such dividend is sufficient to pay the premium. To the same effect is the holding of the Court of Appeals of Kentucky, in Citizens' Life Ins. Co. v. Boyle, 139 Ky. 1, 129 S.W. 303, 308, where the court said: "As appellant had the money in its hands, and it was its duty to credit that money on the premium due, appellant will not be permitted to forfeit the policy because of its failure to do that which ought to have been done. While it may be true that, in the absence of any custom or direction or notice by the insured, the insurance company is under no obligation to credit upon the premium any funds which it may have in its hands belonging to the insured, yet where the circumstances are sufficient to show that the insured desired to continue his policy, and that the compensation should be so applied, the company will not be heard to say that it did not so apply it, but elected to forfeit the policy." Also see Ætna, etc., Co. v. Hartley (Ky.) 67 S.W. 19. So, we conclude that, under the facts and circumstances, in the light of the authorities, the trial court did not err in telling the jury that the acts of appellant in cancelling and forfeiting the policy was wrongful and violative of the insurance contract.

But we think there is still another reason, although not assigned by the trial court, that justifies the charge given. Mr. Lilley, head of appellant's conservation department, testified that, in keeping with a policy to encourage the reinstatement of lapsed policies, he wrote appellee December 9, 1930, that her policy had lapsed, and inclosed an application for reinstatement, asking her "to fill it out and send it to the office, and if she was safely insurable her policy would be reinstated and her account credited with the payment." The policy provision, in regard to reinstatement, is as follows: "At any time after any default in premium payment, upon written application by the insured and presentation at the Home Office of evidence of insurability satisfactory to the Company, this policy, unless previously surrendered for its cash value, may be reinstated upon the payment of arrears of premiums with compound interest thereon at the rate of six per centum per annum, and the payment on reinstatement of any indebtedness to the Company existing at the date of such default with interest from that date." Thus, it appears that, on a showing of insurability, appellee was entitled to reinstatement, as a matter of contract right, and this could not be arbitrarily and without good reason denied. The application for reinstatement was in the form of a questionnaire, designed to develop by the answers of appellee, relevant facts in regard to her insurability at that time. Her answers, without variableness, were explicit and responsive to all questions propounded, revealing indisputably that she was in perfect health at that time, and the truthfulness of her answers was not challenged. However, on receipt of the application for reinstatement January 15, 1931, appellant wrote appellee, denying the same, as follows: "Dear Madam: With this letter I am returning your Postal Money Order of $19.28 enclosed in your letter of October 30, 1930. The application for reinstatement which you had submitted, did not meet the requirements of you (our) Medical Department." Questioned as to his

reasons for rejecting the application for reinstatement, the witness Ebersole, an attache of appellant's medical department, said that: "We (referring to Dr. Sherrick, also connected with the Medical Department) considered * * * the answers made by the applicant to the questions propounded by the Company in the application for reinstatement. We considered the statements made by the applicant, along with her original application for the policy (1919) with the view of determining insurability on the date of the application for reinstatement. The applicant failed to answer the question in regard to her exact height and exact weight, and a letter was sent to her by me requesting this information (neither the letter referred to nor the answer thereto is in evidence). In April 1919, the time when the applicant was first examined for insurance, she was five feet five inches tall, and weighed 118 pounds. Because of the wide discrepancy at that time and at the time her application for reinstatement was received, a special investigation was ordered. Upon receipt of report by a special investigator, the application for reinstatement was rejected and the check sent in attempted payment of the premium due October 30, 1930, returned * * *. The application for reinstatement was denied, because our investigation of the insurability of the applicant showed she was not insurable on the date of her application for reinstatement."

The statement of the witness that appellee failed to answer in regard to her exact height and exact weight obviously is incorrect. Being asked, "What is your present height and weight?" she answered: "Five feet seven inches, 145 pounds." The witness testified that when appellee was first examined for insurance, in April, 1919, she was five feet five inches tall and weighed 118 pounds. A careful examination of the questions and answers in appellee's application for insurance made in April, 1919, including the medical examination, failed to disclose that she gave any answer as to her height and weight at that time. The witness further stated that, upon receipt of the report by a special investigator, the application for insurance was rejected. The record fails to disclose any such report, the name of the investigator, or the contents of such report.

■ After an analysis of the reasons assigned for denying the application for reinstatement, we conclude that appellant's action was arbitrary and without just cause.

Even if the forfeiture declared was justified, the showing of good health at the time the application for reinstatement was made, entitled appellee, as a contract right, to reinstatement. In a similar situation presented in Missouri, etc., Co. v. Hearne (Tex.Civ.App.) 226 S.W. 789 (application for writ dismissed), the Galveston Court held that, under a life policy providing that, if premium is not paid on date when due, insurer will reinstate the policy as of said due date at any time thereafter upon "evidence of insurability satisfactory to the company, and payment of all arrears," etc., and insured who was admittedly in excellent health was entitled to reinstatement as a matter of right; the word "insurability," when used in life policies, being no more comprehensive than that of good health and an insurable interest, such being its ordinary and plain meaning and the popular sense in which it is understood. So, guided by Equity's favorite maxim, we will regard as done that which in good conscience ought to have been done, that is, the policy will be regarded as having been reinstated, and as such that it evidenced a valid subsisting contract, which, being arbitrarily and without legal right repudiated by appellant, entitled appellee to damages. See "Equity," 21 C.J. 200, § 190, and authorities cited.

■ This is a second appeal of the case. See (Tex.Civ.App.) 62 S.W.(2d) 315. On the first appeal this court, speaking through Associate Justice Bond, announced the proper measure of damages. The correctness of the rule announced is not challenged, but, as stated, appellant insists that the evidence presenting a jury question as to the amount of damages sustained by appellee, the court erred in directing the verdict. Disposing of this contention we adopt the argument of counsel for appellee; they say: "The policy involved would have been fully paid in 8¾ years. The amount of money necessary to pay the same, paying quarterly, would have been the sum of $980.70 less $26.22, leaving the sum of $954.48. The amount of money necessary to be paid upon a new 20 year paid up policy was shown to be in the sum of $107.12 annually, that being the amount of $53.56 for the cost of $1,000.00 of such insurance multiplied by two for a $2,000.00 policy, as testified to by Mr. Griffin for one of the age of 55 years, which was shown to be the age of the plaintiff in this case, and the total sum of the twenty year policy of $2,142.40. Subtracting the amount of money necessary to pay the policy canceled to its maturity,

from the amount of money necessary to carry a new like policy to its maturity, is thereby shown to be the sum of $1,135.48, the value of the policy involved at the time of the breach, which was computed by the court to be $898.81, the amount of this judgment. The determination of the value of the policy to the plaintiff in this case under this evidence was only a matter of calculation and not necessary to be determined by the jury as a question of fact."

Finding no reversible error, the judgment of the court below is affirmed.

Affirmed.