## 4136. BANKERS HEALTH AND LIFE INSURANCE COMPANY v GIVVINS.

Where the insurer, by his custom and course of dealing with the insured, in receiving, without objection, premiums or assessments past due, when he could have insisted upon a forfeiture, has induced the belief on the part of the insured that premiums or assessments can be paid within a reasonable time after they mature, the insurer can not claim a forfeiture because, at the time of the death of the insured, premiums or assessments were due by him which, had he lived, it is reasonable to suppose would have been accepted upon the same terms as those upon which other deferred payments had been received.

DECIDED FEBRUARY 19, 1913.

Certiorari; from Chatham superior court—Judge Charlton. February 1, 1912.

*William R. Hewlett, Herschel P. Cobb,* for plaintiff in error.

*T. A. Morgan,* contra.

RUSSELL, J. Minnie Givvins was the beneficiary named in a policy of insurance in the Bankers Health and Life Insurance Company of Macon, Georgia. Upon the death of Otis Jones, the insured, she brought suit to recover the amount for which his life had been insured. The insurance company defended, upon the ground that at the time Otis Jones died he was in arrears for more than four weekly premiums, that his membership had not been renewed, and that, in consequence of this breach of the stipulation of the contract which called for the prompt payment of the premiums, the policy had been forfeited. The particular clauses of the insurance policy upon which the defense is based are as follows: "14. All premiums must be paid on Monday of each week, and any one failing to pay for four Mondays forfeits all he or she may have paid the Company." "16. No renewal of membership shall be had except on payment of all back dues, and not then unless the insured is in good health."

On the trial both sides agreed that the pass-book or receipt book of the insured correctly represented the premium payments which the insured had made, as well as the date when such payments should have been made, if the contract had been strictly complied with. The testimony showed that the insured died Saturday, August 20, 1910, and the pass-book showed that his last payment to the company was made on August 15, 1910, but that this last payment was applied by the company in satisfaction of the premium

due July 18, 1910. The application of the, payment made by the insured on the regular pay-day,—Monday, August 15,—in extinguishment of a premium indebtedness of record as of July 18, is not referred to as a circumstance indicating that perhaps there was a failure to acknowledge the receipt of some payments which were in fact made, or perhaps a failure to enter them as of the correct date (for it is conceded that all payments are correctly entered), but because the pass-book or receipt book furnished to the insured by the company shows, in a column parallel to that in which payments are acknowledged, the exact day of the month (or Monday) when each premium should have been paid, if paid at all, in strict compliance with the contract. If all previous payments had been made promptly prior to the particular Monday, July 18, the receipt book itself shows that when the insured tendered his last payment, and before it was accepted by the company, he was indebted or was in arrears for five payments, to wit, the payments which should have been made on the 18th and 25th of July and on the 1st and 8th of August, as well as the premium due that day (August 15). Under the letter of the contract, the insured had forfeited all he had paid, and, if compliance with the stipulations of the contract in regard to the prompt payment of premiums, as well as the necessity for formal reinstatement, was to be insisted upon, it was the duty of the company and of its agent to decline to receive any more money from the insured, and to declare a forfeiture, as the contract gave it the right to do. From the insured's pass-book, to which we have already referred, it appears that there had been several previous instances in which the company had accepted assessments for which the policy could have been forfeited, under the provision which we have quoted. There is no evidence that the company required compliance with the provisions of paragraph 16, with relation to the renewal of the insured's membership, in any of these instances. The insurer's course of dealing with the insured fully authorized the conclusion that if the insured had not died, the deferred payments which were in default at the time of his death would have been accepted if they had been tendered. The evidence was sufficient to show the insurer's custom of business; and where the insurer, by its custom and course of dealing with the insured, in receiving past-due premiums when it could have insisted upon a forfeiture of the contract, induced the belief that

the insured could pay his premiums within any reasonable. time after they matured in case he should live and continue to pay premiums, it would be unjust and inequitable to .hold that the insurer could, nevertheless, disown the contract because the insured died when premiums were due.

We are clear that the learned judge of the superior court correctly overruled the certiorari; and, even if we had any doubt, we would feel inclined to affirm his judgment, because it appears that there have been several trials of this case; and the beneficiary of the policy has been long delayed in collecting a benefit which the insurer, according to the record, could long ago, in the lifetime of the insured, have declared to be forfeited.    Interest reipublicæ ut sit finis litium.       ·          *Judgment affirmed.*