27103. SOVEREIGN CAMP WOODMEN OF THE WORLD *v.* HEFLIN.

DECIDED DECEMBER 5, 1938. REHEARING DENIED DECEMBER 20, 1938.

*Robert G. Plunkett, R. F. Scarborough,* for plaintiff in error.
*Beck, Goodrich & Beck,* contra.

MacINTYRE, J. In December, 1932, Sovereign Camp Woodmen of the World issued and delivered to Jesse Heflin a ten-year term-insurance certificate payable to Storman Heflin. Jesse Heflin died April 5, 1937. This is an action by the beneficiary against the insurer on the policy. The facts presented by the pleadings and evidence are substantially as follows: The premiums or assessments were payable monthly, and failure to pay promptly rendered the certificate void. Jesse Heflin continued to make monthly payments of all assessments against him up to January 1, 1936, at which time he defaulted, but on February 10 he paid the January and February assessments. He defaulted in payment of the March assessment, but on April 16 paid the March and April assessments. He continued paying assessments until July when he again defaulted, but paid the July and August assessments on August 10. He paid the September and October assessments, but defaulted in November, paying the November and December assessments on December 15, and continued paying all assessments due up to the time of his death in April, 1937. The certificate contained the provision that assessments were to be paid before the last day of each month, and unless so paid the policy was void. No agent or employee of the society had authority to waive or modify the conditions of the certificates. The defendant company in its answer says that the constitution, by-laws, and contract further provided that upon the insured's becoming suspended for failure to pay monthly instalments he might, within three months, reinstate by simply paying the delinquent instalments, and "such payment should be held to warrant that the said Heflin was at such time in good health, and to warrant that said Heflin would remain in good health for thirty days thereafter, and that the payment of such instalment after he had become suspended should be received and retained by the defendant without waiving any of the provisions of the contract, and with the further provision that the receipt and retention of the payment of such instalment, in the event such person was not in good health, should not make such person a member, or entitle him or his beneficiary to any rights whatsoever." On December 29, 1936, Jesse Heflin suffered a heart attack which prevented his working further and from which he died in April, 1937, the company continuing in the meantime to accept the monthly assessments as they became due.

The plaintiff contended that the conduct of the defendant in continuing to accept future assessments as they became due and continuing the insured as a member of the society in good standing, waived its rights to insist on any alleged forfeiture which might have taken place in December, 1936, and that the receipt of the assessments for January, February, and March thereafter continued the policy in force and waived the company's right to insist on a forfeiture. The defendant contended that the policy was automatically forfeited on December 1, 1936, and that the subsequent reinstatement on December 15 was ineffectual because the insured did not remain in good health for thirty days thereafter. The plaintiff insists further that if the policy lapsed at all on December 1, 1936, it lapsed because of the nonpayment of the November dues, and these dues were thereafter paid on December 15, and while the constitution and the by-laws may provide that the retention of these dues for November did not constitute a waiver, that the provision does not refer to dues paid and accepted for subsequent months, and that the acceptance by the company of the dues for January, February, and March bound the company.

If a policy may be forfeited for the nonpayment of premiums or assessments when due, it is unquestionably true in this State that a course of conduct or dealing whereby the company has continued to waive such forfeiture and accept such premiums after the policy may have been forfeited will estop the company from relying thereon. As was said in *Bankers Health & Life Ins. Co.* v. *Givvins,* 12 *Ga. App.* 378 (77 S. E. 203) : "Where the insurer, by his custom and course of dealing with the insured, in receiving, without objection, premiums or assessments past due, when he could have insisted upon a forfeiture, has induced the belief on the part of the insured that premiums or assessments can be paid within a reasonable time after they mature, the insurer can not claim a forfeiture because, at the time of the death of the insured, premiums or assessments were due by him which, had he lived, it is reasonable to suppose would have been accepted upon the same terms as those upon which other deferred payments had been received." See also *Moman* v. *Bankers Health & Life Ins. Co.,* 35 *Ga. App.* 565 (134 S. E. 341). The policy itself, in the present case, provided that the insured might reinstate within three months by paying delinquent instalments or assessments "if in good health," and "such payments

shall be held to warrant that he is at the time of making such payment in good health, and to warrant that he will remain in good health for thirty days after such attempt to again become a member." It is evident that the company in the present case, by its contract, reserved the right to the insured to reinstate within three months from the time of the default. So far as the right to reinstate is concerned there is no need for the application of the doctrine of estoppel as against the insurer. The terms and condition "if in good health," and that he "will remain in good health for thirty days," are conditions themselves which may be waived by the company. In 6 Couch's Cyc. Ins. 4942, § 1376, it is said that a "reinstatement is consummated, when the minds of the parties meet, by the acceptance of an offer to reinstate, and by the payment and acceptance of all arrearages, by accepting and retaining overdue assessménts, even though a by-law provides that acceptance thereof, when a suspended member is not in good health, shall not operate as a reinstatement, by a course of dealing, continued for several months, consisting in retaining overdue payments and continuing to levy assessments, or in accepting and retaining overdue assessments for a considerable period, even though a by-law provides that acceptance thereof, when a member, unknown to the company, is not in good health, shall not operate as a reinstatement."

In the case of Modern Brotherhood of America v. Bailey, 50 Okla. 54 (150 Pac. 673, L. R. A. 1916A, 551, Ann. Cas. 1918E, 744), there was a provision in the policy that where it had lapsed because of nonpayment of dues that it could be reinstated in sixty days provided such member was in good health and provided further "that the receipt and retention of such assessments, etc., in case the suspended member is not in good health shall not have the effect of reinstating him." The November payment was not paid until fifteen days later, and thereafter, during the months of December, January, February, March, and April, the company continued to collect and retain the assessments for those months. The company refused payment on the ground that when the belated payment was made for November the insured was not in good health. It was there held "that the conduct of the company in retaining the belated payment, without condition for several months waived the provision that the reinstatement of a member in default as to payments, is upon condition that such member is in good health."

See also Rice *v.* New England Mutual Aid Society, 146 Mass. 248 (15 N. E. 624) ; Pac. Mut. Life Ins. Co. *v.* O'Neill, 36 Okla. 792 (130 Pac. 270) ; O'Conner *v.* Knights & Ladies, 178 Iowa, 383 (158 N. W. 761, L. R. A. 1917B, 897) ; Schuster *v.* Knights & Ladies, 60 Wash. 42 (110 Pac. 680, 140 Am. St. R. 905). In 5 Cooley's Briefs on Insurance, 4441, it was said: "If a prior acceptance had been conditioned on the continued good health of the insured, the acceptance of *subsequent* assessments will waive such condition, and operate as a complete waiver of the forfeiture." In the Rice case, supra, Rice defaulted in an assessment due July 17. He became ill August 19, and payment was tendered and accepted by the company, and stamped on the notice, which was returned to the insured, was the following: "This assessment is accepted on condition that member is in good health." The company did not know of his illness at the time. Before the death of Rice in December, six other assessments were collected by the company from Rice, no inquiry being made as to the health of Rice, nor was any information offered to the insurer concerning it. The court there held that the levy and acceptance of assessments "after the *conditional acceptance* [italics ours] of a prior overdue payment is a waiver of the right to avoid a certificate for delay of payment." In the reasoning it was said: "Without expressing any opinion as to the effect of the retention of that money, we think the levy of the *sub sequent* assessments, and the acceptance of the money paid upon them amounted to such a waiver. When the time came for the levy of a new assessment, if Rice's policy was to be treated as still in force, he would properly be included in the assessment; otherwise, not. Under this state of things, six other assessments . . were seasonably paid. . . In making the new assessments, so far as appears, no pains were taken and no intention was formed to exclude him. .´ . The company, however, contends that the condition of the former acceptance reaches forward, and applies also to the later payments, and that it is not bound by later assessments which it made, and later payments which it received, in ignorance that the assured was in ill health at the time of the former payment. [The insured died from this illness, Bright's disease, in December.] But it can not be allowed in this way to imply a condition in favor of a forfeiture. . . It had all the information which it cared to take the pains to acquire. We are unable to see how it can prop-

erly be held that the former conditional acceptance cuts down the effect of the later unconditional acceptance."

We do not think the fact that the condition of reinstatement in the Rice case, supra, as expressed in the receipt, differentiated it from the present case where the condition is expressed in the by-laws. Each was a condition as to the act then being transacted, to wit, the payment and acceptance of the overdue payment, which default had voided the contract. If a policy of insurance is reinstated for a year, conditioned on the good health of the insured, and at the end of the period the insurer continues to accept the premiums offered, it will be estopped thereafter from saying that there had never been a valid reinstatement of the policy, whatever may have been the effect had the liability attached during the period for which the premiums or assessments had been paid. As was said in the Bailey case, supra, "The consideration for the insurance is the premium paid, and if, when paid and appropriated by the company, it may while retaining the premium be allowed to plead that the contract of insurance is void ab initio, then in such case the insurer would be bound only at its pleasure."

We think, under the uncontested facts of this case, that the verdict was demanded, and it becomes unnecessary to pass on the assignments of error with respect to the admission of evidence and the charge of the court. The court did not err in overruling the motion for new trial.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*

ON MOTION FOR REHEARING.

MacIntyre, J. The defendant contends that this court erred in deciding that there was a valid waiver because an essential ingredient of waiver is actual knowledge, whereas the record shows no such knowledge, and in order for us to have so decided we must have assumed that the defendant actually knew that the deceased did not remain in good health for thirty days after the reinstatement of the policy. Waiver, as referred to in insurance cases, is sometimes loosely used in the sense of estoppel. A waiver has been defined as "an intentional relinquishment of a known right." Black's Law Dictionary, 688; *United Benevolent Society* v. *Freeman,* 111 *Ga.* 355 (3) (36 S. E. 764). It seems to us that the question here involved is not one merely of waiver, but involves a question of a waiver plus such acts and conduct supporting the waiver as amount

to an estoppel. Estoppel means "that a party is precluded by his own acts from asserting a right to the detriment of another who, entitled to rely on such conduct, has acted thereon." Black's Law Dictionary. It has also been defined as "when a man is concluded by his own act or acceptance to say the truth." 1 Abbott's Dictionary, 445. Thus the insurance company, in the first place, waived the right to forfeit the policy on account of delinquency in payment of premiums by subsequently accepting them (the delinquent payments), and thereafter receiving for several months the regular premiums which were regularly and timely paid. As to the thirty-day period during which time the deceased was required to be in good health in order to be reinstated, the defendant, by unconditionally accepting the regular premiums duly and regularly paid after the expiration of this period, was estopped, in consequence of its own acts of a contrary tenor, from denying the fact that the deceased was not in good health during the said period. Such conduct in accepting payment of the premiums and assessments, it is true, does not change the fact (if we concede such to be a fact), that the insured did not remain in good health for thirty days after the reinstatement of the policy; however, it does bar the insurance company from saying that it did not know of this fact, because the deceased was entitled to rely and act on the conduct of the defendant insurance company, and, having acted thereon when he would not otherwise have done so, the company is estopped, for it has placed itself in a position where it would be inequitable to allow it to make such a defense. *Alabama Construction Co.* v. *Continental Car &c. Co.,* 131 *Ga.* 365 (62 S. E. 160) ; *Yarbrough* v. *Seagraves,* 47 *Ga. App.* 436 (170 S. E. 553) ; *Southern Mfg. Co.* v. *R. L. Moss Mfg. Co.,* 13 *Ga. App.* 847 (81 S. E. 263) ; *Life & Casualty Ins. Co. of Tenn.* v. *Carter,* 55 *Ga. App.* 622 (191 S. E. 153).                                    *Rehearing denied.*