30395. SOVEREIGN CAMP WOODMEN OF THE WORLD *v.* FARMER.

DECIDED FEBRUARY 19, 1944.

*Anderson, Anderson & Walker, Ford & Houston,* for plaintiff in error. *R. B. Williamson,* contra.

FELTON, J. This was an action by the beneficiary against the insurer on a ten-year term convertible certificate, issued by the

defendant in 1936 on the life of David M. Farmer. The premiums were payable monthly, and were duly paid by the insured through the month of March, 1941. The premiums for April and May, 1941, were not paid when due, and under the terms of the certificate and by-laws the certificate became delinquent, and the insured became suspended. Failure to pay the premiums rendered the certificate void. The premiums for April and May, 1941, were paid on June 9, 1941, and remitted to the defendant for the purpose of reinstating the deceased into membership. On June 9, 1941, and continuously thereafter, he was not in good health, but was suffering from a cancer of the stomach, and died from this ailment on September 6, 1941. The premiums for the months of June, July, and August were paid within the time required by the certificate and by-laws. On the trial the court directed a verdict for the beneficiary, and the defendant excepted, to the overruling of its motion for a new trial.

The question in this case is whether the defendant was estopped to set up the defense that the insured was not in good health at the time the payment was made by him to become again a member, by the acceptance and retention of the premium payments subsequently made by him. Under a similar state of facts this court and the Supreme Court had this very question for decision in *Sovereign Camp W. O. W.* v. *Heflin*, 59 *Ga. App.* 299 (200 S. E. 489), and 188 *Ga.* 234 (3 S. E. 2d, 559). The *Heflin* case was predicated on the by-laws applicable to it. Such by-laws provided: "Whenever instalments of assessments are paid by or for a person who has become suspended, *for the purpose of making him a member, such payment* shall be held to warrant that he is at the time of making such payment in good health, and to warrant that he will remain in good health for 30 days after such attempt to again become a member, and to contract that *such instalments* when so paid after he has become suspended for nonpayment of assessments shall be received and retained without waiving any of the provisions of this section or of these laws until such time as the secretary of the association shall have received actual knowledge, not constructive or imputed knowledge, that the person was not in fact in good health when he attempted to again become a member. Provided, that the receipt and retention of *such instalments of assessments* in case such person is not in good health shall not make such person a

member or entitle him or his beneficiary to any rights whatever. The retention by the association of any instalment of assessment paid by or for any person after he has become suspended *in order to again make him a member* shall not constitute a waiver of any provisions of this constitution, laws and by-laws, or an estoppel upon the association." In that case (188 *Ga.* 234) a distinction was drawn between a payment of one or more premiums *for the purpose of making the person* paying them or for whom they are paid a member, and payments made after such person had made payments for the purpose of becoming a member. The *Heflin* case held that there was no contract between the insurer and the person seeking reinstatement, to the effect that payment of premiums or dues and retention of them by the insurer, made after the payment for the purpose of again becoming a member, would not be a waiver of the guaranty of good health, and would not estop the insurer from setting up the fact of the bad health of the insured at the time of the application for reinstatement. The insurer's by-laws have been amended, apparently to meet the decision in the *Heflin* case, and the new by-laws apply to and control this case. The amended by-laws are as follows: "Sec. 65. Whenever payments are made by a person who has been suspended for more than fifteen days, for the purpose of again becoming a member, such payment shall be held to warrant that he is at the time of making such payment in good health, and to warrant that he will remain in good health for thirty days after such attempt to again become a member, and to contract that such instalments when so paid after he has become suspended by not making payments, *as well as all subsequent payments by him made,* shall be received and retained by the society without waiving any of the provisions of this section. . . Sec. 66 a. The acceptance and retention by the society *of any payments made after such attempt to again become a member* shall not constitute a waiver of any of the provisions of this constitution, laws and by-laws, nor operate as an estoppel against the society."

The additional provisions in the by-laws effectively constitute a contract against the waiver by the acceptance of premiums and assessments made after those made for the purpose of again becoming a member. The contract so made is in principle the same as the one approved in the *Heflin* case, and for the reasons there announced is binding on the parties. The insurer was not here es-

topped to set up the bad health of the insured at the time of the application for reinstatement, where the disease with which he was suffering at the time of the application for reinstatement caused his death, and the court erred in directing a verdict for the beneficiary. The fact that unconditional receipts were issued by the financial secretary after the payment made for the purpose of again becoming a member, would not affect the case because under the by-laws he had no authority to make a waiver on behalf of the insurer. The provision in the by-laws that the receipt and retention of instalments, made when a suspended member is not in good health at the time of the application for reinstatement, shall not entitle him or his beneficiary to any rights whatsoever, means rights *under* the policy of insurance, and does not mean that the insured or his personal representative would not be entitled to a return of premium for which no benefit was received by the suspended member. Any other interpretation would make the by-law defective as being against public policy.

*Judgment reversed. Sutton, P. J., and Parker, J., concur.*