**Norman E. GRIFFIN, Plaintiff,**

v.

**AETNA LIFE INSURANCE COMPANY,
a corporation, Defendant.**

**·Civ. No. A78–3009.**

United States District Court,
D. North Dakota,
Southeastern Division.

Sept. 28, 1979.

Leland F. Hagen and Michael D. Nelson, Ohnstead, Twichell, Breitling, Arntson & Hagen, West Fargo, N. D., for plaintiff.

Donald R. Hansen and Stephen W. Plambeck, Nilles, Hansen, Selbo, Magill & Davies, Ltd., Fargo, N. D., for defendant.

ORDER

BENSON, Chief Judge.

Plaintiff in the above entitled action seeks judgment in its favor on a life insurance policy issued by the defendant. The action was commenced in North Dakota District Court, Cass County, First Judicial District, and was removed to this court on diversity grounds. In addition and alternatively to requesting judgment, the plaintiff moves the court pursuant to N.D.R.App.P. 47(a) to certify certain legal questions to the North Dakota Supreme Court. The facts are stipulated as follows:

On December 16, 1976, Robert E. Griffin, who at the time was a student at North Dakota State University and a resident of

Cass County, made application for a life insurance policy with Aetna Life Insurance Company through its agent Marvin Kostelecky. At that time Robert signed an application for insurance and tendered $21.12 to Mr. Kostelecky. This amount represented roughly ¹⁄₁₂ of the annual premium of $253.50. In return, Robert received a conditional receipt of insurance.[1] On December 22, 1976, Aetna issued the life insurance policy on the life of Robert which provided for death benefits in the amount of $15,-000.00 plus an additional $30,000.00 in the event of accidental death.

After the policy was issued, Marvin Kostelecky contacted Robert to set up an appointment to deliver the policy and to collect $232.38, the balance owing on the first year's premium. This appointment was set for January 12, 1977. Prior to the appointment date, however, Robert telephoned Mr. Kostelecky and changed the appointment date to January 19. Robert failed to keep this appointment. Mr. Kostelecky made several attempts to meet with Robert to deliver the policy and to collect the balance of the annual premium, but did not succeed.

Mr. Kostelecky finally reached Robert by telephone on January 24, 1977. At this time Robert informed him that he did not wish coverage with Aetna and that he had decided to apply for coverage with the Minnesota Mutual Life Insurance Company instead. Mr. Kostelecky then asked Robert to return the conditional receipt and stated that Aetna would refund the $21.12.

The local agency then followed its normal procedure in processing the policy as "Not Taken Out."[2] On January 31, 1977, the agency wrote to Robert at his Fargo address requesting return of the conditional receipt and enclosing a check for $21.12. The letter was returned as undeliverable. The agency then on February 4, 1977, mailed the letter to Robert's father's address at Grandin, North Dakota.

On February 5, 1977, Robert E. Griffin died as a result of a farm accident. He had never returned the conditional receipt, signed a receipt for refund of premium, nor cashed the refund check. From December 22, 1976 until February 5, 1977, no action had been taken by Aetna's home office to establish the policy was not in force. The $21.12 that Robert paid to Aetna is the only money he or anyone on his behalf paid Aetna for the policy applied for.

It is undisputed that if the Aetna policy was in effect on February 5, 1977, Aetna is required to pay plaintiff, beneficiary under the policy, the sum of $45,000.00. The issue thus presented is whether the policy was in effect on February 5.

Plaintiff has moved to have this court certify certain questions of law to the North Dakota Supreme Court pursuant to N.D.R.App.P. 47(a). Contrary to plaintiff's assertion, however, this court finds that there is sufficient North Dakota precedent to enable this court to decide the issue presented. Although certification does same time and promotes cooperative judicial federalism, "[i]ts use in a given case rests in the sound discretion of the federal court." *Lehman Brothers v. Schein*, 416 U.S. 386, 391, 94 S.Ct. 1741, 1744, 40 L.Ed.2d

---

[1]. The conditional receipt, commonly known as a "binder," provided in effect that if Robert would later be deemed insurable by Aetna, the policy would go into effect on the date of application. The provisions of the receipt are stated more fully in a subsequent portion of this opinion.

[2]. On January 31, 1977, a refund check, No. 2653, was issued by Bev Sander, the agency's office manager, and the appropriate check entry made on the agency's Cash-Check Record No. 5. A debit and credit memo, No. 41624, was used to validate the check issue and the words that this was a "Not Taken Out" policy and that an agency check No. 2653, had been issued to refund the amount of the down payment, were typed on the memo. The memo was then attached to the agency's Cash-Check Record and sent to the Regional Service Center on Friday, February 4, 1977, to cancel their record of money on deposit. The policy specification page, first premium receipt and initial premium card were all marked "Not Taken Out" and sent to the Regional Service Center. All of the above entries were made by Bev Sander, the office manager. The agency's Cash-Check Record is used to make entries of all money taken in and all checks issued in the agency and is then mailed to the Regional Service Center on Friday of each week.

215 (1974). Therefore, this court will proceed to decide the issue.

The Aetna policy in issue was never delivered to Robert Griffin, but this is immaterial since delivery of an insurance policy to the insured is not essential to make it binding on the insurer unless there is an agreement to that effect. *Ulledalen v. United States Fire Ins. Co.*, 74 N.D. 589, 612, 23 N.W.2d 856, 868 (1946). The present Aetna policy contained no such provision.[3] The policy did, however, contain a provision on payment of premium as follows:

> Premiums are payable in advance at the Home Office or to an authorized representative of Aetna. A receipt signed by Aetna's Secretary and duly countersigned will be furnished. Premiums may be paid annually, semi-annually, quarterly, or with Aetna's consent, monthly at the rates in effect on the Date of Issue A change to any such frequency will take effect when Aetna accepts the premium for the changed frequency. *If any premium is not paid when due or within the grace period, the policy will terminate*, subject to the sections of this policy entitled "Reinstatement" and "Guaranteed Values." (Emphasis added).

Under the terms of the policy the annual premium due was $253.50. This premium became due and payable in advance on the date of issue, December 22, 1976. Robert had elected the annual method of payment so that on December 22 he was required to pay the full annual premium less the sum already paid. It is undisputed that this balance was never paid by Robert nor by anyone on his behalf.

Plaintiff argues that pursuant to the general provisions of the policy, the entire contract consists of the policy and the application so that the provisions of the conditional receipt should not be held controlling after

December 22. But since Robert never paid a full premium as required by the policy, the court must look to the conditional receipt to determine what Robert received in exchange for his payment of $21.12.

The conditional receipt Robert received stated in material part as follows:

> This payment is received on the express understanding that no insurance shall be effective under either said application or this receipt except as may be provided in the following terms and conditions:
>
> (1) If . . . the proposed insured is, on the date of the last of [any required] medical examinations or tests, insurable according to said Underwriting Rules at standard rates for the plan of insurance applied for, then insurance shall be effective, from said date on the plan and under the terms of the policy applied for . . . .
>
> (2) If insurance becomes effective as provided in (1), and the sum received is less than the first premium required under the policy, the insurance shall be effective only for such period as the sum received will purchase on a pro rata basis unless an amount equal to the remainder of the first premium is paid during the lifetime of the proposed insured and within 60 days from the effective date of the insurance . . . .

The conditional receipt indicates that once the policy is issued, coverage is effective from the date of application[4] and is governed under the terms of the policy. But if said policy is issued, and the first premium required under the policy is not paid in full, then in addition to the policy, the terms of the conditional receipt also control.

The insurance policy issued on December 22 became effective on December 16, pursu-

---

3. For this reason, the court finds that defendant's reliance on *Ziegler v. Nat. Life & Acc. Ins. Co.*, 441 F.2d 869 (8th Cir. 1971) is misplaced. Although the factual circumstances in *Ziegler* are similar to those in the instant case, the insurance policy in *Ziegler* contained among other provisions different than that contained in the present policy, a delivery provision which caused the court to hold that no written policy ever went into effect. In the present case, the parties are agreed that during some span of time, Robert was covered by the written Aetna policy.

4. No medical examination was required as a condition to coverage in the instant case.

ant to subsection (1) of the conditional receipt. Thus subsection (2) becomes applicable. Since Robert Griffin paid less than the first premium required under the policy, he received coverage on a pro rata basis. He paid only approximately 1/12 of the annual premium so that coverage was effective for one month. Whether this month would be measured from December 16, the date of application, or from December 22, the date of issue, is not important. In any case, the parties have stipulated that the only period for which Robert Griffin or anyone on his behalf ever paid for insurance with Aetna on the life of Robert ran from December 16, 1976 to January 16, 1977.

Since Robert had paid for insurance only through January 16, 1977, the only way he could have been covered on February 5 would be by benefit of a grace period. Under the heading of "Premiums and Reinstatement," the policy states as follows: "A grace period of 31 days, during which this policy will remain in full force, will be allowed for the payment without interest of each premium *after the first*." (Emphasis added). The emphasized words indicate that there is no grace period for paying the first premium. The issue thus becomes whether Robert ever paid the "first premium."

■ Plaintiff contends that the $21.12 paid does represent payment of a premium in the context of the grace period provision, so that Robert had a 31 day grace period after expiration of the first month of coverage on January 16. The policy indicates, however, that Robert had elected to pay premiums annually, although he had the choice to pay monthly, quarterly or semi-annually. It has generally been held in other contexts that an insured cannot force an insurer to accept as a premium less than what the contract calls for. In *Halliday v. Equitable Life Assur. Soc.*, 54 N.D. 466, 209 N.W. 965 (1926), the court faced the issue of whether the plaintiff was covered under the policy when he had failed to pay a required annual premium. Dividends due under the policy would have been sufficient to pay a quarterly premium which would have covered the span of time in which the plaintiff's precedent died. The policy, however, stipulated for payment of premiums annually and in advance. The court in addressing the issue, stated as follows:

> In the absence of facts or circumstances showing a waiver, express or implied, of that stipulation in the policy, the insurer could not be compelled to accept payment of less than the installment due on May 12, which was the full annual premium. The insured had the privilege of paying premiums quarterly, semiannually, or annually; he had elected to pay the premium annually and contracted accordingly. Until that stipulation was abandoned or waived, either expressly by agreement or impliedly by custom or the course of conduct of the defendant, it was incumbent upon the insured to pay the premium in full when due.

209 N.W. at 968.

In the instant case, the grace period was not applicable until the "first premium" was paid. Furthermore, the Aetna policy stipulated premiums were due annually and were to be paid in advance. If this court would find that the $21.12 paid represented the "first premium" under the policy's grace period provision, in spite of the fact that the policy called for annual premiums, it would be forcing Aetna to accept as a premium less than what Robert had contracted to pay. Absent some waiver by Aetna, the *Halliday* decision does not allow this result.

Plaintiff argues that the $21.12 paid was accepted by Aetna as a premium on the policy later issued.[5] There is no indication that Aetna waived its contractual right to have premiums paid annually. There was no agreement between Robert and Aetna that Robert could pay a monthly premium. Nor did Aetna accept the $21.12 in lieu of the annual premium. When the Aetna

---

5. In addition to the waiver language contained in the quoted portion of the *Halliday* decision, the premium provision previously quoted in the main text provides that a change to a different frequency of payment is effective when accepted by Aetna.

agent discovered, by communicating with Robert, that Robert no longer wanted the policy and would not pay the annual premium, he made no attempt to encourage Robert to reconsider. He told him the $21.12 would be returned. The Aetna agent then had the policy processed as not taken out[6] and attempted to return the premium. Aetna did not acquiesce in any arrangement to accept less than the annual premium to ensure continued coverage.

The conditional receipt clearly indicates what Robert received for his $21.12. He purchased insurance "on a pro rata basis unless an amount equal to the *remainder of the first premium* is paid. . . ." (Emphasis added). This further shows that Aetna did not accept this payment as a "first premium." Nor was there any custom or course of conduct between the parties which would waive the annual premium requirement. No practice of accepting less than the annual premium had ever developed.

The court, therefore holds that before the policy grace period would be applicable, the first premium must have been paid. The court further holds that "first premium" means the annual premium as contracted for in the policy. Since this first premium was never paid by Robert, the policy grace period never went into effect.

Robert had no greater rights under North Dakota statute than he had under the policy. Under N.D.Cent.Code § 26–03–35(2) (1978), life insurance policies must contain "[a] provision for a grace of one month for the payment of every premium *after the first.*" (Emphasis added). Therefore, the analysis used in discussing the policy grace period requires the same result here.

Since the parties have stipulated that Robert's "paid-for" coverage expired on January 16, 1977, without benefit of the grace period, Robert Griffin, was not covered by the Aetna policy on the date of his death. By its own terms the policy had lapsed prior to February 5, 1977.

In some situations an insured may be entitled to rely on certain insurance law doctrines giving him rights at variance with the policy provisions. *See* R. Keeton, Basic Text on Insurance Law, 341 (1971). Plaintiff has cited several cases which support the view that an insurance contract is an adhesion contract so that any ambiguity in the policy is to be construed strictly against the insurer and in favor of the insured. *See e. g., Applegren v. Milbank Mut. Ins. Co.,* 268 N.W.2d 114, 118 (N.D.1978); *Mills v. Agrichemical Aviation, Inc.,* 250 N.W.2d 663, 670 (N.D.1977). Plaintiff would appear to have this court believe that anytime a policy is ambiguous, it should be construed so as to provide coverage. Assuming but not finding that the policy was ambiguous, this court holds that the Doctrine of Adhesion should be considered in light of the Doctrine of Reasonable Expectations since the latter appears to be an expansion of the Doctrine of Adhesion.

North Dakota has adopted the Doctrine of Reasonable Expectation in interpreting the language of insurance contracts. *Mills v. Agrichemical Aviation, Inc.,* 250 N.W.2d 663, 672 (N.D.1977). This doctrine is an aid to the interpretation of insurance contracts and states that in the event of an ambiguity, "[a]n insurance policy is held to mean what a reasonable person in the position of the insured would think it meant." 250 N.W.2d at 673, quoting *Haugen v. Auto-Owners Insurance Co. of Lansing,* 191 N.W.2d 274, 275 (N.D.1971).

In looking at the facts of the instant case, it becomes apparent that Robert Griffin had no *actual* expectation of coverage by Aetna on February 5, 1977, much less a reasonable one. Robert told the Aetna agent on January 24 that he no longer wanted the insurance. The agent in turn told Robert that the $21.12 would be refunded. It is evident that at this time Robert had no reasonable expectation of continued coverage. In fact his actual expectation was that he was not covered by

6. *See supra* note 2.

the Aetna policy. This is supported by statements he made to others.[7]

It is the conclusion of this court that interpreting the policy as it has, does no violence to any reasonable expectations Robert Griffin had. Logic would dictate that the Doctrine of Reasonable Expectations does not operate solely for the benefit of the insured, and should not be so used when the insured has exhibited that he had no expectation of coverage, as was done in the instant case.

IT IS ORDERED that plaintiff's motion to certify is DENIED.

IT IS FURTHER ORDERED that judgment be entered dismissing plaintiff's complaint and cause of action.

---

**7.** On January 31, 1977, Robert Griffin made application to Minnesota Mutual Life for a life insurance policy. On the application which Robert signed as being true to the best of his knowledge, in response to a question as to the life insurance in force on his life as of January 21, Robert answered "0." Furthermore, Bradley Pratt, agent with Minnesota Mutual, testified on deposition that in talking with Robert, he asked him about the Aetna policy, and that Bob responded that he had gotten the Aetna agent to leave him alone. The sum of this evidence indicates that Robert Griffin had no subjective expectation of coverage from the Aetna policy.